We're glad to have you with us today. We'll be hearing four oral arguments on the docket and we'll call the first case number 21-30474 United States of Good morning and may it please the court. My name is Samantha Kuhn and I represent Ariston Wilson in this appeal. With the court's permission I'd like to focus on the two evidentiary issues related to Mr. Wilson during argument but of course I'm happy to answer questions about the other issues at any point. Starting with the rule 404B error because that was critical error in this case especially in a trial where the evidence against Mr. Wilson was already so thin. The testimony to come in about an uncharged robbery from three months after the charge defenses that Mr. Wilson was involved in and the district court admitted it for both identity and intent purposes but both of those admissions were error. Starting with identity clear precedent in this court dictates that for something to be admissible as extrinsic proof of identity or MO it needs to be so similar to the charge defense that it has a signature quality that it marks the handiwork of the accused and it needs that distinctiveness because the whole point of 404B is to prevent juries from making conclusions based on the character or propensity of a defendant to commit a crime and if a jury were allowed to conclude simply because somebody committed another robbery that they were more likely to have committed the charge defense that would be an improper inference and that's why identity evidence is required to be so similar and so distinctive. In this case the government hasn't disputed that the only similarities tying the charge defenses and the uncharged conduct is our generic common features of most armed robberies. It was armed men wearing masks and gloves who robbed a gas station and stole money and those are generic features not only under according to the government and according to defense but also according to this court in Myers. In Myers this court found that those were generic features common to most robberies that could not create the sufficient distinctiveness in order for the evidence to be admissible for identity purposes and in Myers in fact the court said that even in combination and even in combination with other similarities that don't exist here that was not sufficient and so I think that case as well as the Carrillo case from this court where there was it was a drug offenses and there was an extrinsic drug buy that was in the same drug-ridden neighborhood the court said that that was not sufficiently similar even though the offenses occurred in the same area and so that ends the inquiry with respect to the identity issue that should not have been admitted to prove MO or identity in this case. Then shifting to the intent issue. Can I stop you there for one second? The geographic proximity or not of these what is your position on that? Are these I mean are the this I forget how many seven crimes that are the charged crimes here or the crimes under the indictment this extrinsic one where was it and in your view does the proximity or not help or hurt your argument here? I think the proximity actually helps the argument here in this case. Well where was it I guess first? So the extrinsic offense was in the New Orleans East area whereas all of the charged offenses occurred on the West Bank area. How far is that? I'm from Baton Rouge. I believe it's about especially when you're trying to create a signature quality. I think if you look at all of the charge defenses for example if they're all occurring in the same neighborhood presumably that could be a feature you say okay well these are all in the same area maybe that is some kind of similarity that goes to it. This was the opposite side of town and then I think also Carrillo is instructive here because in Carrillo the charge defense was a drug distribution and the neighborhood not even the same city but the same neighborhood and the court found that just simply the fact that there were other drug buys in the neighborhood where heroin was sold in balloons in the same format the same general I guess structure of a drug sale that is not sufficiently distinct I guess to make it relevant for identity purposes. So I think here you don't even really get to the geographic proximity because that is not a distinctive quality but I think if you were to look at it it actually weighs in favor of the so far relative to the cluster of robberies that occurred in the charge defense. Okay and so as far as identity you're I don't know if you're saying this you're the case you point to is Myers that's the strongest you think that's the strongest case that that shows this evidence shouldn't have been admitted under 404 B. Yes I think Myers and Carrillo. Okay thank you. Yes and then shifting to intent when we look at intent the district court also erred for this admission starting off with the fact of relevancy as this court held in Beecham relevance is based on what the evidence is submitted to prove what it is what it is provided as evidence of and here the government at no point tried to provide this evidence as proof of Mr. Wilson's intent to join a conspiracy with John Weldon three months prior to commit other robberies that was never argued that was never presented for that purpose and so it had no relevance to the intent element but that being said this court doesn't even need to parse out whether it might have bore some kind of relevance because it assumes pronged to under the balancing act between probative value and risk of undue prejudice under this court's precedent when you look at that balancing test the first factor you look at is the government's need for the evidence when you're analyzing probative value and prejudice and here the government had no need this is analogous to the Jackson case where the central issue in the case was identity was Mr. Wilson one of the people depicted in the surveillance footage of the robberies once the jury made that conclusion there was no question that the intent was found because as the government argued in closing clearly these two individuals work together to commit the robberies the government in fact treated this as kind of a disposable element in its closing saying that set aside conspiracies and agreement clearly clearly there's an agreement let's move on to the evidence that they actually committed this crime and so here once you get to prong to under Jackson this clearly requires reversal because the probative value couldn't possibly provide any I guess value to the jury in assessing the intent element it was inconsequential and negligible at most and on the other hand there was a significant high risk of prejudice from this this evidence which was the clearest indication that Mr. Wilson committed any robbery this was essentially a caught red-handed moment where they explained how they tracked a car from the robbery saw him get out of the car went into the apartment where the individuals went into and found him in there where there was a rifle which is also a distinction from the other charged robberies and money and all these other elements and so this was the most damning incriminating evidence to suggest that Mr. Wilson committed any robbery and then in closing the believable that he didn't commit the charge offenses when he was found in this closet hiding with money and a gun and all of these other elements even injecting additional similarities that didn't exist to try to draw a thread between these over the additional similarities that didn't exist in your view primarily the blue gloves the government said repeatedly in closing I believe three times that blue gloves were a common element that linked these to the charge and uncharged robberies and then I believe at one point they also said found in the same clothes which that's unclear where that came from it wasn't blue gloves in your view it was gloves of some other color there was no evidence of the color of the glove right the testimony was only that they had face coverings and gloves and so for all of those reasons at the very least if this court doesn't reverse the convictions on sufficiency grounds mr. Wilson is entitled to a new trial with that 404 be evidence excluded now with my remaining time I was going to address the lay opinion testimony evidence issue it does not appear from the briefing that the government disputes that this is not permissible testimony the government has never argued that this was defensible or this should have been admitted it only argues that this is not clear obvious error that is not there does not need to be as I think the case from this court on the exact fact pattern and scenario for this to be clear obvious error the standard is simply whether it's subject to reasonable dispute under the existing law and based on Masha where this court reviewed very similar testimony where somebody looked at a surveillance photo or video identified the defendant and provided that as lay opinion testimony this court explicitly relied on the fact that the government had provided an adequate foundation for that specifically that the person had lived in the in the BOP prison facility for four years with the defendant had interacted with them 30 to 40 times had personal familiarity and that was the make sure that I'm clear on this because the briefing is a little I found to be a little vague the identification that they make of the defendants that the witness makes of the defendant is part of the investigation prior to the charges being brought in this case or are you saying that at the trial or before the trial as part of the trial prep like an expert witness the officer looked at the or the investigator looked at the photographs or the video and said well that's the same person is it for trial purposes or is it for as a part of the investigation where they're trying to identify people who were wearing masks on the video or the photographs I think it was presented as both so it was presented in the context of asking the officers about how they came to identify mr. Wilson as the other individual in their view in these surveillance photos and so they explained that they did this photo comparison and determine that this was the individual but isn't that the whole reason why we have surveillance cameras and convenience stores and things of that nature to record an image so that that image can be matched up and the person identified sure but I think the issue here is that that was the central factual question for the jury to surveillance and the officers testifying that they believe that was him and they could positively confidently identify him in that photo that added nothing to the jury's analysis because they had no basis no I guess other basis to be more familiar with his appearance than the jury did and in fact that testimony went beyond just saying oh this was our investigation we determined this was him from the photos and that's why we arrested him it went beyond that into identifying from their view almost as if an expert would specific elements and saying that they looked at other photos and compared it basically imputing this additional credibility bolstering the own credibility of the officers in their explanation and then beyond that the officers did I believe one officer did directly identify the defendant sitting at the table as the person he identified to be in the video or the photo and then later the officer even said he testified that the eyewitness told him when he went to talk to him during the investigation that yeah that was definitely the eyes of Mr. Wilson when in fact that witness testified that he did not know and could not identify from the photos and so I think there's a many elements that bolster the prejudice here were there I don't mean to interrupt you I know you're running out of words were there limiting instructions or some kind of instructions from the court to the jury with respect to the officers testimony as to the photo no the only limiting instructions with respect to opinion testimony were directed to expert testimony because I believe it was expert testimony about either the interstate commerce element or something else there was no limiting instruction directed to the actual lay opinion testimony about the photographs because presumably because it was not Mr. Pleasance good morning your honors Mark Pleasance CJA attorney on behalf of Mr. Weldon while my colleague did a phenomenal job in explaining to you why our clients there's insufficient evidence to show that our clients committed the crime I'd like to focus real quick on how do you get there because the this is one of those rare cases at least the first one I've ever found where counsel trial counsel failed to invoke rule 29 in fact both rule rule 29 in fact both counsel failed to do so so according to the jurisprudence or to which I would like to have this court examine it says that you must find a rather than insufficient evidence under under the Jackson standard which to me is a much more easier burden for this for the government sorry if I say state because I'm in state court alive for the government because according to the manifest miscarriage of justice rule it says as long as they can point to any evidence in the record to sustain conviction that's sufficient that's that's not what Jackson calls for and that's not what sufficient evidence calls for it's certainly not what the jury was instructed the jury was instructed that they must find the defendants guilty beyond a reasonable doubt and while the Delgado case which was on bond may limit or you may feel limits your ability to sway or move away from my argument there is plenty jurisprudence outlined in the briefs that say how do you get to convince your colleagues to review their ruling on bond to in other words you're not constrained to follow the rule merely because it's on bond you can say we recommend our colleagues review it because of this and here's why again like I said that in writing this opinion we should encourage our colleagues to go on bonk to change Delgado if necessary yes yes because it's it's just not a fair decision it's it's it's it's it's got some obviously a cover one at least one dissent was justice then Judge Dennis former Justice Dennis and but it it just constrains the defendant so much because if the government says here's a piece of evidence a cluster of robberies oh that might be sufficient to confirm but especially you know as my colleague pointed out and I'll get right to my client in the last few minutes not want you talked about surveillance not one of the store individuals could identify mr. Weldon as the robber not one of the surveillance videos could identify mr. Weldon the only Lewis's testimony isn't that enough to to carry a conviction on your client he may have alluded to the fact that they committed the bank robbery okay but I don't recall where he noticed I'm parsing the two I'm not forfeiting the bank robbery but I'm parsing the two because I think that it's the evidence is less on on the on the the stores and the only thing they found is they call the state a state probation officer said who had seen him eight times and said I think it's him looking at photographs and did not even point to him in court couldn't say in that's judge Duncan who have had on probation eight times well thank you mr. Pleasant you have you have a some time for a short time for rebuttal so thank you mr. Daly may it please the court Kyle Daly for the government with courts permission I'd like to turn directly to Wilson's 4-4-b argument the uncharged robberies by Wilson in the months after the charged robberies that he committed with Weldon and in Wilson's pretrial filings he what he argued was that the uncharged robberies would be overly prejudicial he didn't say that any issue would you speak a little louder for some reason this is not capturing every yes yeah and so what what he what he argued was that the the uncharged robberies would be overly prejudicial but he did not say that any issue was going to be uncontested such as identity or intent by the time we got to the trial at the end of the government's presentation the parties argued about whether one single of those eight uncharged robberies ought to come in and that was the last of the eight uncharged robberies and again counsel does not say that intent or identity are going to be uncontested issues and the identity and intent and it's a it's another robbery of another New Orleans gas station convenience store with multiple individuals wearing gloves masks using handguns and using a getaway car now under beach on the analysis is in two steps right whether the probative value of that robbery or whether the robbery has some relevance to an issue other than character and then whether probative value is substantially outweighed by the risk of unfair just so I can understand you're saying that with respect to this uncharged robbery maybe you're saying the the other side did not argue that there was a problem with respect to identity or intent for introducing those they only argued about prejudice is that what you're saying they only argued about prejudice before trial and then their argument at during trial was limited to we don't think that this robbery is similar enough to come in okay so but so you're not saying that the way that this was argued below should affect our review of the 404 be no no the reason I'm getting it the reason I'm getting into that and the reason it's important is this because this court since Roberts and many other times since that citing Roberts has said that under the Beacham the first step of the analysis whether whether an issue is relevant in a conspiracy case intent is always relevant this court has said that over and over again conspiracy is charged here before we get too far into that what makes this piece of evidence this particular robbery so unique and so identifiable look so as to link to one or both defend I think in just one one of the defendants in this case what makes this robbery stand out in that in that fashion I mean convenience stores get robbed by people in masks and with guns and getaway cars unfortunately very for be what this court said in Myers is that is that multiple common features together can be of high probative value and so yes oftentimes armed robbers wear masks oftentimes they use handguns oftentimes these getaway cars but in this case all of those all of those are present just like the charge robberies and importantly and these are in Myers what they were talking about robberies that happened in different states I think it's Pennsylvania and Florida so you have this this large area of the country and the issue is is the likelihood that somebody else is committing these similar robberies and when you have them you know just miles apart as we recently discussed that makes it much the probative value is much higher because the likelihood that it's somebody it just happens to be somebody else it goes down significantly so it's another gas station convenience store face coverings rather than for multiple robbers rather than a lone robber cash rather than just property alone getaway car rather than bike motorcycle so yes all these things are rather common but you put them all together you put them in close geographic geographic space and close in time we think that that is enough for the district court to find that we heard that the geographic space was I forget how many miles but two different parts of New Orleans what about the temporal proximity how how much time I believe there's less than four months and I have yet to see a case and the defense hasn't side anywhere this court found that a different area of town was not geographically close and this I guess you could call them different areas of town but I wouldn't say that they were on the opposite sides of town and New Orleans is a relatively small city so this is I mean this is a minute's drive away from all these gas stations it just so happens that five or so of the charge robberies all are you know practically walking distance from each other so so if there's a signature there then you move to to the second step of the analysis and so what we're looking at is a number of factors one the necessity of the evidence whether whether the uncharged robbery is similar timing and whether they're limiting instructions given to the jury about this evidence and and before I move on to that with the intent issue what they're arguing is that the government's evidence basically took intent out of the relevancy determination because it was so strong that's what they're arguing on appeal but what this court has said under Roberts and and other cases is that in order for it not to be relevant under step one the defendant has to take that issue out and so so this court said you can do that for instance by stipulating so if counsel stipulated to the government's intent then that would have taken the intent issue out but that's an element that we have to prove in every conspiracy case so so our argument is that that satisfies that first step of the Beacham analysis so then you move to to the 403 analysis in step two and this evidence was was additional evidence that the Wilson was one of those two robbers and that he was a willing and active participant in these robberies these these robberies were very similar even though the government didn't get out that the gloves were blue as it intended to these are the exact same crime so this isn't like a Jackson situation where the government or where the district court admits a five-year-old conviction for stealing a couple of watches when the defendant is charged with expert jewelry thieves from stealing offered stealing almost a million dollars in jewelry and shipping them interstate so these are very similar crimes they're the exact same crime the timing also much better than in Jackson we're not talking about five year a five-year-old conviction we're talking about we're talking about months in Jackson it's not entirely clear from the opinion whether jury instructions were given the opinion does not say that the instructions were given it mentions that instructions can reduce the prejudice and that's what happened here the district court gave limiting instructions both when the evidence was admitted and then at the end of the case as well and this this was not this was not a mini trial this there were ten different robberies that were discussed in this trial so this was just one robbery two witnesses isolated at the at the end of the case because the district court as this courts often do one wanted to hear what the government's evidence was before determining whether or not to admit that 404 B evidence it wasn't particularly inflammatory because it's just one more of the same kind of crime the jury has already heard about all these other robberies so consider considering all that the district court did not abuse its discretion by admitting this for for identity or intent now turning to the testimony about Wilson's eyes there's nothing in the plain language of rule 701 that prohibits an officer front who studied surveillance photos during his investigation and studied pictures of a suspect from explaining to the jury that this can this comparison was part of my investigation and it led me to do other things I it was my opinion that that these eyes matched and so I decided to focus my investigation on this particular individual and that's what happened in this case now do you agree maybe do you agree that if we were looking to the law of other circuits on this issue maybe not I'm not sure how many circuits but some other circuits would say you you wouldn't admit testimony under 701 I think unless the proponent of the testimony actually knew the person so oh yeah I can tell I've his eyes whereas that's not what's happening here right the officers didn't know this person outside the context of the investigation that's true the case that we rely on is Maddox from the Sixth Circuit which which was a similar situation here where the court found that it was important that the officer was not called for the purpose of identifying the defendant but was explaining what he what he did during his investigation but yes if if for instance detective Cochran was called just for the purpose of looking at two as the robber then yes under most circuit precedent that would be problematic and you'd say that was error you wouldn't be arguing that that's permissible if that were the case I would be that's correct if that's what the government did in this case then then that's correct there was no objection so there really wasn't much of a foundation laid there's no there's no indication that we can see from the record that detective Cochran had previous dealings with mr. Wilson another another factor that comes up in the case law is whether or not the appearance of the defendant has changed we don't really know whether that was an issue or not we don't know exactly what Wilson look like in court but there's no indication that his appearance changed but this was this was part of him explaining why what Wilson has noted at trial and I think it was maybe the first statement or his first sentence in a statement of the case I was never implicated by anybody that's one of his arguments and so the jury's I was never implicated by anybody no no no witnesses identified me they didn't get any tips and so the jury is going to be left to wonder without without testimony about this comparison well why did they pick Wilson out of everybody you know on earth to to start investigating why are they looking for him are they trying to track down his address why are they trying to talk to his brother and so the detective is explaining this is why this this comparison of these eyes was important to me and that's why I did that and you're saying just so I can understand your answer about other circuit precedent you're saying that there's a Sixth Circuit case that supports the distinction that you're making here yes okay and that's what is that again Maddox and that you do X Maddox okay and even if even if the admission of this testimony could be considered to be plain air or that the air was clear and obvious then we moved it prongs three and four and here the government didn't use detective Cockerham as some sort of expert in in identification it in a situation for instance where the government says you know this detective has has compared hundreds of surveillance photos to suspects and he's just better suited than you jury to look at this evidence maybe that would be problematic but that's not what happened if that would be error I think right maybe even clear error if that's what the government did yes yeah perhaps yeah but here the government didn't even mention the eyes and it's first closing argument the defense Wilson's counsel made a big deal of the eyes in his closing argument and what the government did in response was just pulled up both pictures jury take a look at this now Wilson's counsel appellate counsels are arguing well we the government used the phrase same eyes and so and I guess the suggestion is is that that triggered the jury to defer their comparison of these photos to one of the officers because one of the officers said same eyes but there's nothing distinctive about the phrase same eyes and if you if you look throughout the transcript the Wilson's counsel makes the point on his cross-examination of the officers you're not an expert in in comparing eyes and the officer says no I'm not and the government doesn't dispute that the government doesn't dispute that in closing arguments either so this was this was there's no reason to believe that the jury just gave up its comparison and just believe detective Cochran because he said that he thought that the eyes were the same unless there are any other questions we would ask that you affirm the convictions as we've noted in our brief there was an issue with Wilson's sentence and how the guidelines are calculated so we agree that Wilson's sentence needs to be vacated okay do you have any response mr. Pleasant's making an argument about our precedent what's your response to me my response is if this court is going to precedent about the standard of review it ought to be maybe in a case where where the issue is close and maybe it's a borderline case but as judge Engelhardt pointed out in one of these convictions his accomplice explained how the robbery happened there was no alluding to it he'd said this this is how the robbery happened that was well then there he is he's robbing the bank and then on the convenience store of course our energies to our panel can't upend precedent right exactly that's my argument all right also do you agree that we would not reach the section 1 b 1.2 question on sentencing the guideline issue if we go ahead and vacate and remain it seems like the government's an agreement that there needs to be a resentencing yes so I don't see any reason for the court to I just wanted to point out I know the government just said that I believe they said that we hadn't cite any cases on the geographic issue I just wanted to redirect the court's attention to Korea that was the case with as I mentioned before the drug offenses and the court specifically said in some the January 8th sale the extrinsic sale was a typical drug sale in a drug-ridden urban neighborhood where such trans transactions are commonplace and so even in the same neighborhood that was not deemed to be sufficiently similar also with respect to the getaway car I wanted to point out that as the government notes in its brief there's only two of the charge offenses where they even alleged that there was a getaway car but if you look at the surveillance of those in which is in evidence and in the record there's no getaway car present at the scene at the actual place that's robbed in particular if you look at the circle H surveillance video you see two individuals walking from blocks away and then they leave the same way running down the street and the government claims that a car that drives by later is the getaway car and matches John Weldon's car whether that's true or not I would argue that that is a distinction not a similarity between the uncharged offense where there was actually a getaway car present that drove up to the gas station and left from the same position and then moving on to the lay opinion testimony just briefly I know judge Duncan you were asking about other circuits it is a seven circuits the first fourth seventh eighth ninth tenth eleventh have all held that there has to be some basis for the person testifying about who is in a surveillance video or footage to conclude that they would be better able than the jury to make that assessment and make that identification the Maddox case that the court mentioned that they said was you know arguably created a circuit split or something like that I believe was unpublished Sixth Circuit case and in that case the the person who was testifying it was a police officer who had actually conducted a raid it's unclear whether the defendant was present for that raid but it suggested that potentially he did have some out of court interaction with the defendant and in fact in that case the court explicitly said that their ruling was governed by Mansour which was another Sixth Circuit case and in that case a security security guard at a bank had seen the defendant casing the bank prior to the offense actually being committed so in Mansour there was a clear basis for that person being more familiar and seeing the defendant in the circumstances outside of the actual case or the comparisons to the jury could do so the Sixth Circuit relied on that and said that they were governed by that also one last point I wanted to note that in the government's closing they did specifically identify the eyes mr. Wilson's eyes allegedly in that photo as the single unique feature they talked about the tan boots being common and all these other elements but otherwise they largely tried to lump him in with the evidence against John Weldon and then specifically pointed those eyes as being unique so I think that heightens and shows why this was this lay opinion testimony was prejudicial thank you thank you mr. Pleasant you have 60 seconds per rebuttal or a minute I think three quick points regardless of whether you believe that you should try to convince your colleagues to change the standard of review or not it's a miscarriage of justice to find mr. Weldon guilty in this case first of all I'll point you to the fact that his pro as I mentioned before the government called his probation officer and at record page 1 0 3 9 he said the you said you're not 100% sure dismissed the well then correct and he said no yes I mean essentially it was not correct the government sent him photographs as regarding the Hobbs Act issue which is important because again when it miscares you're going to point to any issue the government called an FBI expert who said in a leading question so cigarettes are involved in interstate commerce yes nothing further than that and finally your honor the the last thing judge testimony regarding the things concerning the bank robberies and not the convenience to robberies which I'm just focusing on today mr. Pleasant you were appointed and we appreciate your service thank you thank you counsel cases under submission